WENDELE HUSCHLE

*v.*

HARRY MORRIS.

*Filed at Ottawa January 21, 1890.*

1. CHATTEL MORTGAGE—*stock of goods—mortgagor retaining posses-sion and making sales in usual way.* Where, by an understanding be-tween the parties at the time of the execution and delivery of a chattel mortgage on a stock of merchandise, the goods are left in the hands of the mortgagor, to be sold by him in the usual course of his business as a retail merchant, the mortgage will be fraudulent and void as to cred-itors of the mortgagor. If any arrangement is made, express or implied, by which the mortgagor is allowed to continue the sale of the goods for his benefit, the mortgage will be invalid as against an attachment or execution creditor.

| | |
|---|---|
| 131 | 587 |
| 39a | 184 |
| 39a | 437 |
| 131 | 587 |
| 141 | 158 |
| 131 | 587 |
| 58a | 75 |
| 131 | 587 |
| 73a | 409 |
| 131 | 587 |
| 105a | 2 36 |
| 131 | 587 |
| 113a | 1 358 |

2. SALE OF PERSONAL PROPERTY—*delivery of possession—whether essential.* In case of an unconditional sale of specific chattels, delivery is not essential to complete the sale and pass the title, as between the parties, where, by the agreement, nothing remains to be done but for the purchaser to take possession. But as to creditors and *bona fide* purchasers the rule is different, as a delivery is indispensable to complete the sale, so as to render it valid as against them.

3. PRACTICE—*directing what the verdict shall be.* Where the plaintiff fails to introduce any evidence to prove a fact essential to his recovery, it is proper to instruct the jury to find for the defendant.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis, the Hon. BENJAMIN H. CANBY, Judge, presiding.

Mr. WILLIAM P. LAUNTZ, for the appellant:

A creditor may take all lawful steps to secure himself. He may take goods or lands in payment. *Gray* v. *St. John,* 35 Ill. 222; *Axtel* v. *Cullen,* 3 Ill. App. 527; *Scarlett* v. *Gorham,* 28 Ill. 319; *Partridge* v. *Chapman,* 81 id. 137; *Peck* v. *Arehart,* 95 id. 113; *Hessing* v. *McCloskey,* 37 id. 342.

There was no fraud in giving and taking a chattel mortgage. *Nelson* v. *Smith,* 28 Ill. 495; *Waterman* v. *Donalson,* 43 id. 29; *Tomlinson* v. *Matthews,* 98 id. 178; *Miller* v. *Kirby,* 74 id. 242; *Herkelrath* v. *Stookey,* 63 id. 486; *Cook* v. *Thayer,* 11 id. 617.

There was a sale and delivery of the property to secure an honest debt. Fraud is never presumed.

The court is not justified in instructing the jury that any fact has not been proved, if there is evidence tending to establish it. *Stevens* v. *Snyder,* 8 Bradw. 362; *Insurance Co.* v. *Dill,* 91 Ill. 174; *Railroad Co.* v. *Sykes,* 96 id. 162; *Van Duzor* v. *Allen,* 90 id. 499.

A demurrer to evidence not only admits all the facts stated therein, but also every conclusion which a jury might fairly and reasonably infer therefrom. *Phillips* v. *Dickerson,* 85 Ill. 11; *Waller* v. *Carter,* 8 Bradw. 511; *Lawrence* v. *Life Ins. Co.* 5 id. 280; *Guerdon* v. *Corbett,* 87 Ill. 272.

HUSCHLE *v.* MORRIS.            589

Brief for the Appellee.    Opinion of the Court.

Mr. A. FLANIGEN, for the appellee:

The chattel mortgage, as to the store of goods, was fraudulent as a matter of law. Where there is a license to sell, whether shown by the mortgage or outside of it, the mortgage is void as to creditors. *Dunning* v. *Mead*, 90 Ill. 376; *Davis* v. *Ransom*, 18 id. 396; *Greenebaum* v. *Wheeler*, 90 id. 296; *Simmons* v. *Jenkins*, 76 id. 479.

The sale was fraudulent *per se,* as to creditors, etc., for want of a delivery. *Rozier* v. *Williams*, 92 Ill. 187; *Lefever* v. *Mires*, 81 id. 456; *Broadwell* v. *Howard*, 77 id. 305; *Dunlap* v. *Berry*, 4 Scam. 327; *Thompson* v. *Wilhite*, 81 Ill. 356; *Ticknor* v. *McClelland*, 84 id. 471; *Lewis* v. *Swift*, 54 id. 436.

In case of an absolute sale, there must be a change of possession, as against creditors and subsequent purchasers. *Thompson* v. *Wilhite*, 81 Ill. 356; *Thompson* v. *Yeck*, 21 id. 73; *Reed* v. *Eames*, 19 id. 594.

The jury could find but one way, and it was the duty of the court to instruct them to so find. *Simmons* v. *Railroad Co.* 110 Ill. 340; *Bartelott* v. *Bank*, 119 id. 271.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of replevin, brought by Wendele Huschle against Harry Morris, to recover possession of the following goods and chattels, to-wit: all the goods and groceries, shelving, counters, and other property of every description then in the building occupied and used by George H. Recker, as a grocery store, in the city of East St. Louis. The declaration was in the *cepit* and *detinet*, and all subsequent formal pleadings were waived by the parties, it being stipulated that either party might introduce at the trial any evidence which would be competent under proper pleadings. The defense actually interposed was, that at the time said goods and chattels were taken by the defendant, they were the property of said Recker, and that the defendant, then and there being a constable of

the county of St. Clair, seized and was holding said goods and chattels under and by virtue of a writ of attachment against the goods and chattels of said Recker, duly issued to the defendant by a justice of the peace of said county. At the trial, the court, at the close of the evidence, instructed the jury to find the property in controversy to have been the property of said Recker at the time of the levy of said writ of attachment, and to find the issues for the defendant, which was accordingly done, and the court, after denying the plaintiff's motion for a new trial, gave judgment for the defendant. Said judgment has been affirmed by the Appellate Court on appeal, and said judgment of affirmance is now brought here for review.

On the 8th day of August, 1887, and for some time prior thereto, George H. Recker was the owner of the stock of goods in question, and was keeping a general retail grocery and provision store in East St. Louis. He seems at that time to have been indebted to the plaintiff, who is his father-in-law, in the sum of $1000 or over, about $700 of said indebtedness having arisen from the plaintiff's having given his individual promissory note for that sum in payment of said stock of goods at the time of the original purchase thereof by Recker about a year before, and the residue of said indebtedness being for divers advances subsequently made by the plaintiff to Recker in money and property. On or shortly before said 8th day of August, 1887, the plaintiff applied to said Recker for security for said indebtedness, and after some negotiation, it was agreed between them that Recker should execute to the plaintiff his promissory note for $1000, due two years after date, and secure said note by a chattel mortgage on said stock of goods, and certain other property of said Recker. Said papers were executed, the mortgage being duly acknowledged and recorded. It was provided in the mortgage that the mortgagor should retain possession of said stock of goods, and he did in fact retain possession thereof, and continued, with the approval and permission of the mortgagee, to sell from said stock of

goods at retail in the ordinary course of business, precisely as he had formerly done. On the 22d day of August, 1887, various creditors of said Recker, and among them the firm of Fink & Nasse, sued out attachments before a justice of the peace, against the goods and chattels of said Recker, and the attachment in favor of Fink & Nasse having been placed in the hands of the defendant in this suit to execute, he being then a constable of said county, said writ was, by the defendant, levied on all the goods and chattels covered by the mortgage. Judgment was afterwards rendered in the attachment suit for the amount of Recker's indebtedness to the plaintiffs therein, and a special execution was awarded for the sale of the property attached. At the trial, the plaintiffs in the attachment suits released from their levies all of the mortgaged property except the stock of goods and merchandize in said store, and the question now presented is, as to the ownership of said stock of goods at the time the same was levied upon by virtue of said writs of attachment.

There can be no doubt that, as against the rights of the attaching creditors, the chattel mortgage must be held to be fraudulent and void. The evidence shows, and that too without any material controversy, that, by the understanding of the parties at the time the mortgage was executed, the stock of goods was left in the hands of the mortgagor to be sold by him at retail in the usual course of his business as a retail merchant. True no provision as to the sale of said property was inserted in the mortgage, but that is unimportant, so long as the real intention of the parties was that such sales should be made. The rule is well settled that a mortgage on a stock of goods which authorizes the mortgagor to retain possession and carry on his business by selling the goods, is fraudulent as to creditors and void. *Gardner* v. *McEwen,* 19 N. Y. 123; *Edgell* v. *Hart,* 9 id. 213; *Griswold* v. *Sheldon,* 4 id. 590; *Davis* v. *Ransom,* 18 Ill. 396; *Read* v. *Wilson,* 22 id. 377; *Barnet* v. *Fergus,* 51 id. 352; *Simmons* v. *Jenkins,* 76 id. 479;

*Goodheart* v. *Johnson,* 88 id. 58; *Greenebaum* v. *Wheeler,* 90 id. 296; *Dunning* v. *Mead,* id. 376.

In *Simmons* v. *Jenkins, supra,* it was held that if, by any arrangement, express or implied, the mortgagee permits the mortgagor to continue in the sale of the mortgaged goods for his own benefit, the mortgage will be unavailing as against a judgment creditor. So in *Barnet* v. *Fergus, supra,* the evidence showed that the mortgagor continued, after the execution of the mortgage, with the knowledge and permission of the mortgagee, to sell certain of the mortgaged property in the same way as before the mortgage was made, and it was held that such sales constituted such perversion of the mortgage from its legitimate purpose as to withdraw from its protection, and place within the reach of creditors, all the property which the mortgagee had permitted the mortgagor to hold for sale in the ordinary course of business. In *Dunning* v. *Mead, supra,* it was held that, although the mortgage was fair on its face, yet if the mortgagee, soon after its execution, gave written permission to the mortgagor to sell the goods in the usual course of business, but to hold the proceeds as agent for the mortgagee, the mortgage is void as to *bona fide* creditors and purchasers.

But the plaintiff, at the trial, seems to have disclaimed reliance upon the chattel mortgage as proof of his title, and to have sought to show that the real transaction, at the time the mortgage was executed, was a sale of the property described in the mortgage by Recker to him, and that he thereupon employed Recker as his agent to remain in possession of said property and use the same in carrying on, in the plaintiff's name and for his benefit, the mercantile business which Recker had previously been engaged in on his own account.

Without pausing to consider the manifest incongruity between the execution of the note and mortgage as security for an indebtedness and the theory of a sale of the same property at the same time in satisfaction of the same indebtedness, and conceding that the written evidence of the transaction fur-

nished by the note and mortgage is not necessarily conclusive of its true character, there is an entire failure in one respect to prove such sale as would vest the plaintiff with a title to said goods which can prevail as against the creditors of his vendor. There is no evidence of delivery. Recker was in possession of said stock of goods at the time of the alleged sale to the plaintiff, and continued in possession from that time until the levy of the attachments, and the evidence wholly fails to show any point of time at which his possession was yielded, even for an instant, to the plaintiff.

In case of an unconditional sale of specific chattels, delivery is not essential to complete the sale and pass the title as between the parties, where, by the agreement, nothing remains to be done but for the purchaser to take possession. But as to creditors and *bona fide* purchasers the rule is different, as a delivery is indispensable to complete the sale so as to render it valid as against them. *Corgan* v. *Frew*, 39 Ill. 31. The rule is that a purchaser of personal property, in order to acquire title as against creditors and purchasers without notice, must reduce it to possession before their rights attach. *Lewis* v. *Swift*, 54 Ill. 436. This doctrine is sustained by numerous decisions of this court. *Thompson* v. *Wilhite*, 81 Ill. 356; *Lefever* v. *Mires*, id. 456; *Ticknor* v. *McClelland*, 84 id. 471; *Broadwell* v. *Howard*, 77 id. 305; *Rozier* v. *Williams*, 92 id. 187; *Burnell* v. *Robertson*, 5 Gilm. 282; *Dunlap* v. *Berry*, 4 Scam. 327.

There being no evidence of delivery, the plaintiff's case necessarily failed by reason of his failure to introduce evidence tending to prove a fact which was absolutely essential to his recovery. The instruction requiring the jury to find its verdict for the defendant was therefore proper. *Poleman* v. *Johnson*, 84 Ill. 269; *Hinsdale-Doyle Granite Co.* v. *Armstrong*, 6 Bradw. 315. The judgment will be affirmed.

*Judgment affirmed.*